TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-1259
    Facsimile: (213) 894-0141
    E-mail:   alexander.schwab@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>          v.<br><br>DR. N. VAHEDI PHARMACY INC.,<br>  dba "FUSION RX COMPOUNDING<br>  PHARMACY," et al.,<br><br>      Defendants. | No. CR 19-531-CAS<br><br><u>PLEA AGREEMENT FOR DEFENDANT</u><br><u>FUSION RX COMPOUNDING PHARMACY</u> |

    1.   This constitutes the plea agreement between defendant Dr. N. Vahedi Pharmacy, Inc., doing business as Fusion Rx Compounding Pharmacy ("defendant" or "FUSION RX") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

    2.   Defendant understands and agrees that this agreement is part of a "package deal" in which the disposition of the case against defendant is tied to and conditioned on the disposition of the case

against codefendant Navid Vahedi.  Accordingly, defendant and the USAO agree that this agreement and the obligations it creates will not become binding on the USAO and defendant unless and until: (a) defendant executes this agreement and enters a guilty plea in accordance with this agreement; and (b) codefendant Vahedi also executes his plea agreement with the USAO and enters a guilty plea in accordance with that agreement.  Defendant acknowledges that defendant has discussed with defendant's attorney, and carefully considered, the possible advantages and disadvantages to defendant of entering into this agreement as part of the package deal; defendant is entering into this agreement as part of the package deal freely and voluntarily because defendant believes this agreement and the package deal to be in defendant's best interests; and defendant is not entering into this agreement as part of the package deal because of threats, coercion, or other undue influence by the USAO or by anyone else associated with FUSION RX.

DEFENDANT'S OBLIGATIONS

3.    Defendant agrees to:

a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the indictment in United States v. Dr. N. Vahedi Pharmacy Inc., et al., CR No. 19-531-CAS, which charges defendant with conspiracy, in violation of 18 U.S.C. § 371.

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

2

d.    Pay a fine to be set at an amount, subject to the statutory maximum, sufficient to divest defendant of all its net assets.

e.    Appear for all court appearances, timely pay any fine ordered and obey any other ongoing court order in this matter.

i.    Agree, pursuant to Section 15002(b) of the CARES Act, that defendant's change of plea hearing may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearance is authorized by General Order 20-043 or another order, rule, or statute.  Defendant understands that, under the Constitution, the United States Code, the Federal Rules of Criminal Procedure (including Rule 11), defendant may have the right, through defendant's counsel, to be physically present at these hearings.  Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver.

f.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

g.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

h.    Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

i.    Not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

3

j.   Defendant agrees that any and all restitution/fine obligations ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

k.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

l.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

m.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

n.   Defendant understands and acknowledges that as a result of pleading guilty pursuant to this agreement, defendant will be excluded from Medicare, Medicaid, and all Federal health care programs.  Defendant agrees to complete and execute all necessary documents provided by the United States Department of Health and Human Services, or any other department or agency of the federal government, to effectuate exclusion from Medicare, Medicaid, and all Federal health care programs within 60 days of receiving the documents.

4.   Defendant further agrees:

a.    To forfeit individually and on behalf of any entity in which defendant has held an ownership interest; or over which defendant has had the ability, whether through position or formal or informal agreement, to exercise control, all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty (the "Forfeitable Assets").

b.    To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the property.

c.    To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.    Not to contest any administrative or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.    Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.    Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

j.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that the forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

THE USAO'S OBLIGATIONS

5.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

6

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. §§ 3553(a) and 3572.

COMPANY AUTHORIZATION

6.    Defendant represents that it is authorized to enter into this agreement.  On or before the change of plea hearing pursuant to this agreement, defendant shall provide the USAO and the Court with a notarized legal document certifying that defendant is authorized to enter into and comply with all of the provisions of this agreement. Such resolution(s) shall designate Navid Vahedi as the company representative who is authorized to take the actions specified in this agreement, including pleading guilty on behalf of the company, and shall also state that all legal formalities for such authorizations have been observed.

ORGANIZATIONAL CHANGES AND APPLICABILITY

7.    This agreement shall bind defendant, its successor entities (if any), parent companies, and any other person or entity that assumes the liabilities contained herein ("successors-in-interest"). Defendant, or its successors-in-interest, if applicable, shall provide the USAO and the United States Probation and Pretrial Services Office for the Central District of California with immediate

notice of any name change, business reorganization, sale or purchase of assets, divestiture of assets, or similar action impacting their ability to pay the fine or comply with any forfeiture obligations or otherwise affecting this agreement.  No change in name, change in corporate or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter defendant's responsibilities under this agreement.  Defendant shall not engage in any action to seek to avoid the obligations and conditions set forth in this agreement.

NATURE OF THE OFFENSE

7.   Defendant understands that for defendant to be guilty of the crime charged in count one, that is, conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1347, and to pay illegal remunerations, in violation of 42 U.S.C. § 1320a-7b(b)(2), the following must be true: (1) there was an agreement between two or more persons to commit health care fraud and to pay illegal remunerations; (2) defendant joined in the agreement knowing of its objects and intending to help accomplish those objects; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

a.   The first object of the conspiracy, that is, health care fraud, in violation of 18 U.S.C. § 1347, has the following elements: (1) an individual knowingly and willfully executed or attempted to execute a scheme or plan to defraud a health care benefit program or obtain money or property owned by or under the custody or control of a health care benefit program by means of material false or fraudulent pretenses, representations, or promises;

8

(2) the individual acted with the intent to defraud; (3) the victim or attempted victim was a health care benefit program; and (4) the scheme or plan was executed in connection with the delivery of or payment for health care benefits, items, or services.

b.   The other object of the conspiracy, that is, the payment of illegal remunerations, in violation of 42 U.S.C. § 1320a-7b(b)(2), has the following elements: (1) an individual offered or paid remuneration, directly or indirectly, in cash or kind to a person; (2) the individual paid the remuneration to induce the person to refer an individual for the furnishing of an item or service, or to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item, that could be paid for, in whole or in part, by a Federal health care program; and (3) the individual did so knowingly and willfully..

<u>PENALTIES AND RESTITUTION</u>

8.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 371, is: a five-year term of probation; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $400.

9.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may

order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in USSG § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in USSG § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $4,405,926, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

10.  Defendant understands and acknowledges that, as a result of pleading guilty pursuant to this agreement, defendant will be excluded from providing services paid for under a federal health care benefit program for a minimum of five years.

FACTUAL BASIS

11.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Relevant Entities and Individuals

Between May 2014 and at least February 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant, defendant's owner Navid Vahedi, Joseph S. Kieffer, and

Joshua Pearson, (1) knowingly, willfully, and with intent to defraud, to execute a scheme to obtain money from various health care benefit programs, including TRICARE, Medicare, FEHBP, Amtrak, and private insurance plans (the "Affected Health Care Programs"), by means of materially false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of, and payment for, health care benefits, items, and services; and (2) knowingly and willfully to offer to pay and to pay remuneration in the form of illegal kickbacks to generate and steer compounded drug prescriptions to defendant for dispensing, where the dispensing of drugs pursuant to many of those prescriptions was reimbursable in whole or in part under Federal health care programs.  Defendant joined in the agreement knowing of its objects and intending to help accomplish those objects and was operated for a criminal purpose.

Defendant was a provider of compounded drugs.  Vahedi partnered with Kieffer, through a business entity Kieffer controlled, Sheridan Medical.  Kieffer and Sheridan Medical acted as marketers for FUSION RX.  Kieffer and Sheridan Medical entered into a contract with co-conspirator Pearson and his entity PHIRX LLC ("PHIRX") for the purpose of steering prescriptions for compounded drugs to FUSION RX in return for kickbacks.

Kickbacks Paid for Prescription Referrals

Defendant, Vahedi, and Kieffer sought to have prescriptions for compounded drugs submitted to defendant so that defendant could then bill various insurance providers, including Federal health care programs such as Medicare and TRICARE, for the provision of those compounded drugs.  After learning of defendant, co-conspirator Pearson contacted Vahedi to arrange for PHIRX to steer compounded

drug prescription referrals to defendant in exchange for the payment of kickbacks.

In exchange for the generation and routing of compounded drug prescriptions by marketers, Vahedi, through defendant, made payments to Sheridan Medical, through which kickbacks were then paid to Kieffer, Pearson, and PHIRX.  The kickbacks represented a varying percentage ranging from around 50 percent of the amount insurance plans reimbursed for the prescription referrals.  Kieffer would keep a portion of this kickback for himself and use the remainder to pay kickbacks to Pearson and PHIRX for referring compounded drug prescriptions to defendant.  For example, on March 10, 2015, Kieffer made a $470,937.25 kickback payment to Pearson, via PHIRX, through a check drawn on his account with First Bank and bearing the memo "Jan Commissions."

In order to facilitate the prescription referrals, Vahedi, Kieffer, and Pearson, and other marketers, provided preprinted prescription script pads to physicians, including physicians who were not otherwise treating a particular patient.  Vahedi, Kieffer, and Pearson relied on these preprinted prescription forms to generate compounded drug prescriptions referrals through offering various "check-the-box" options on the form to maximize the amount of insurance reimbursement for the compounded drugs.  Using the preprinted script pad forms, physicians would select a compounded drug formulation from the form's options and the marketers or respective physicians would send the prescriptions to defendant for dispensing.  Vahedi, defendant (through Vahedi), Kieffer, and Pearson knew it was illegal to pay remuneration to induce the referral,

order, or purchase of any item or service reimbursed under a Federal health care program.

Accounting

From May 2014 to at least February 2016, defendant received approximately $14 million in reimbursement on its claims for compounded drug prescriptions from health care benefit programs, including over $5 million from federally-funded health care programs. To facilitate the authorization and steering of compounded drug prescriptions, Vahedi and Kieffer paid Pearson, through PHIRX, approximately $5,419,759 in commission-based kickbacks.  Pearson used these proceeds to pay varying amounts to patients to incentivize these patients to fill their prescriptions for compounded drugs at defendant and to become marketers who generated such prescriptions for defendant at Pearson's behest.

Fraud Related to Copayments

As part of defendant's contracts to do business with various insurance networks through Pharmacy Benefit Managers (PBMs), Vahedi, through defendant, agreed to collect copayments from patients for the prescriptions defendant fulfilled.  Because the copayments created a disincentive for patients to request expensive and potentially unnecessary compounded drug prescriptions, defendant did not collect copayments with any regularity.  At other times, Vahedi, through defendant, would provide gift cards to patients to offset the amount of the copayments.

Later, after concerns surfaced during an audit of defendant that it would be discovered that such copayments had not been collected, defendant directed funds from defendant to be used to purchase American Express ("AMEX") gift cards, which Vahedi, through

13

defendant, then used to pay copayments for certain prescriptions fulfilled by defendant without the patients' knowledge.  Vahedi, through defendant, submitted claims on these prescriptions to various insurance providers, falsely representing that patients had paid the required copayments.  These false representations were material to health care benefit programs, who paid the underlying claims relying on misrepresentations that copayments had been paid.

Vahedi and Kieffer enlisted Pearson to help them maintain the illusion that patients had paid these copayments, which Vahedi knew were actually paid with the AMEX gift cards purchased by defendant.  For example, on April 22, 2015, Vahedi emailed Kieffer and Pearson with the subject line "Audit was today" and instructed as follows: "Please make sure that all your patients know to say that they did pay the copay and that they paid with credit card.  If asked for a card number the response should be I don't remember which card I used or I don't have my wallet or purse with me."  Similarly, Vahedi used Kieffer as a conduit to make sure that Pearson's patients falsely confirmed that they paid a copayment for their prescriptions.  For example, on March 5, 2015, Vahedi sent a text message to Kieffer, writing: "You have to make sure that all of [Pearson's] people say they paid a copay if asked."  Insurance providers reimbursed defendant approximately $4,405,925 based on claims for which defendant falsely represented that the required copayments had been paid, including well over $1 million to federal health care programs.

<u>SENTENCING FACTORS</u>

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures

14

under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. §§ 3553(a) and 3572.  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) and § 3572 factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.  Defendant and the USAO agree that USSG § 8C1.1 applies because the parties, upon consideration of the nature and circumstances of the offense and the history and characteristics of defendant, agree that defendant operated primarily for a criminal purpose and primarily by criminal means.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

14.  Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.  The right to persist in a plea of not guilty.

    b.  The right to a speedy and public trial by jury.

    c.  The right to be represented by counsel at trial. Defendant understands, however, that defendant retains the right to be represented by counsel at every other stage of the proceeding.

    d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e.  The right to confront and cross-examine witnesses against defendant.

f.    The right to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right, if defendant chose not to present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

15.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

16.   Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the fine imposed by the Court, provided it is within the statutory maximum; (c) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (d) the amount and terms of any restitution order; and (e) the term of probation imposed by the Court, provided it is within the statutory maximum.

17.    Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, that newly discovered evidence purportedly supports defendant's innocence, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

18.    The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a fine sufficient to divest defendant of all its net assets, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

19.    Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between

17

the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

20.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

21.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

22.  Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement (a "breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

18

23. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

24. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing

19

recommendations or the parties' agreements to facts or sentencing factors.

25. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

27. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

28. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____          1/27/2021
ALEXANDER B. SCHWAB                       Date
Assistant United States Attorney

_____          26JAN2021
NAVID VAHEDI                              Date
Representative of
Dr. N. Vahedi Pharmacy, Inc., dba
FUSION RX COMPOUNDING PHARMACY
Defendant

_____          1/27/2021
VICKI I. PODBERESKY                       Date
ROBERT E. DUGDALE
Attorneys for Defendant
Dr. N. Vahedi Pharmacy, Inc., dba
FUSION RX COMPOUNDING PHARMACY

CERTIFICATION OF DEFENDANT

I have the authority to act on behalf of defendant Dr. N. Vahedi Pharmacy, Inc., doing business as Fusion Rx Compounding Pharmacy

21

("Fusion Rx"), including entering this agreement on Fusion Rx's behalf. I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with Fusion Rx's attorney. I understand the terms of this agreement, and I voluntarily agree to those terms on Fusion Rx's behalf. I have discussed the evidence against Fusion Rx with my attorney, and my attorney has advised me of Fusion Rx's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to Fusion Rx other than those contained in this agreement. No one has threatened or forced Fusion Rx in any way to enter into this agreement. I am satisfied with the representation of Fusion Rx's attorney in this matter, and I am entering a guilty plea on Fusion Rx's behalf because it is guilty of the charge and I wish, on its behalf, to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     26 JAN 2021
NAVID VAHEDI                          _____
Representative of                     Date
Dr. N. Vahedi Pharmacy, Inc., dba
FUSION RX COMPOUNDING PHARMACY
Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am one of the attorneys for Dr. N. Vahedi Pharmacy, Inc., doing business as Fusion Rx Compounding Pharmacy. I have carefully and thoroughly discussed every part of this agreement with my

22

client's authorized representative.  Further, I have fully advised my client's authorized representative of my client's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. §§ 3553(a) and 3572, of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is informed and voluntary; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____     ___1/27/2021_____
VICKI I. PODBERESKY                  Date
ROBERT E. DUGDALE
Attorneys for Defendant
Dr. N. Vahedi Pharmacy, Inc., dba
FUSION RX COMPOUNDING PHARMACY

23